UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Appeal Case No. 22-22686-Civ-Scola
Bankruptcy Case No. 17-20358-LMI (Chapter 13)

HAMMOCKS COMMUNITY
ASSOCIATION INC., and
MARGLLI GALLEGO,
        *Appellants,*

vs.

JOSUE CEPERO and
LETICIA CEPERO,
        *Appellees.*
_____/


_____

APPELLEES' ANSWER BRIEF

_____


Law Office of Michael J. Brooks
Attorney for Debtor
8660 West Flagler
Miami, FL 33144
Telephone 877-290-9197
Facsimile 954-623-6125
mbrooks@bankruptcynow.com

## TABLE OF CONTENTS

**PAGE**

Table of Authorities     iv

Statement on Jurisdiction     1

Standard of Review     1

Statement of the Case     1

**I.  December 2018 Contempt Orders.**     2

**II.  Joint Representation and Joint Defense of Appellants.**     4

**III.  The May 15, 2019 Altercation/Incident.**     5

**IV.  Appellants did not object to the Findings and Conclusions in either the Contempt Order [ECF 328] or the Sanctions Order [ECF339].**

    6

**V.  The November 2020 Lawsuit.**     7

**VI. The bankruptcy court, having found both Appellants in contempt and for violating the automatic stay, ordered a final evidentiary hearing to "hear evidence on emotional distress damages and the ability of Ms. Gallego and the Association to pay punitive damages" – with entitlement to punitive damages against <u>both</u> Appellants having already been determined.**

    8

     **A.    Rehearing was granted where the bankruptcy court inadvertently failed to award Debtors' attorney's fees for the December 2021 proceeding; and, where for failing to assess punitive damages against the Association.**

    9

Issues Presented     11

Summary of the Argument     12

Argument     14

I.    The initial contempt orders clearly prohibited the type of confrontation found to have occurred during the May 15, 2019 incident.

14

A.  Appellants waived this issue by failing to raise same below.        15

II.   The bankruptcy court did not abuse its discretion in finding Appellants in contempt for the May 15, 2019 altercation, and Appellants cannot possibly show that the bankruptcy courts findings were clearly erroneous.

16

III.    Appellants, through joint counsel, never claimed that the Association was not liable for contempt for the acts of its President, Marglli Gallego, and waived this issue or invited error.

18

A. Even if the issue was not waived, the bankruptcy court was presented with sufficient evidence of the Association's involvement in the May 15, 2019 incident where Marglli Gallego told the police she was driving a Hammocks vehicle doing an inspection as the President at the time of the incident.

21

IV. The bankruptcy court's conclusion that the November 2020 lawsuit violated the automatic stay was correct where Appellants sued Leticia Cepero for matters that included pre-petition acts.

22

A.   If the November 2020 Lawsuit was not a violation of the automatic stay, Appellants cannot answer why, as found by the bankruptcy court, "[o]nce advised of this bankruptcy case, state court counsel immediately dismissed the November 2020 Lawsuit."

23

V.  The Association is directly liable for punitive damages as a matter of law.

24

**A.  As conceded by Appellants, §768.72 does not modify or eliminate "direct liability" where the wrongful acts are committed by a corporation's president, and *Shropp* is still followed by Florida appellate courts.**

27

**B.  The Association never really contested its liability for damages, aside from punitive damages, and the Association does not and cannot contest its liability for punitive damages for instituting the November 2020 lawsuit – so the punitive damage award is proper anyway.**

29

Conclusion                                                                30

Certificate of Service                                                31

Certificate of Compliance                                       32

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Baker v. R.J. Reynolds Tobacco Co.*, 158 So. 3d 732 (Fla. 4th DCA 2015)    21

*Rosenberg v. DVI Receivables, XIV, LLC*,
471 B.R. 307, 313 (Bktcy. S.D. Fla. 2012)                                    28

*Schropp v. Eurocars*, 654 So. 2d 1158 (Fla. 1995)                          24

*Steinhorst v. State*, 412 So. 2d 332 (Fla. 1982)                           20

*Wells Fargo Bank, N.A. v. Elec. Funds Transfer Corp.*,
326 So. 3d 754, 758 (Fla. 5th DCA 2021)                                     27

**Other Authorities**

§768.72(3), Florida Statutes                                                27

iv

## STATEMENT OF JURISDICTION

Josue Cepero and Leticia Cepero, the Debtors and Appellees in this proceeding do not contest the jurisdiction of this Court regarding this appeal. The proceeding on contempt against Appellants, including entry of Orders: i) initially finding Appellants in contempt; ii) determining the range of sanctions; iii) awarding amounts of various damages; granting, in part, Debtors' motion for rehearing, has concluded. This Court has jurisdiction over this appeal, and Debtors do not contest the matters stated by Appellants regarding jurisdiction.

## STANDARD OF REVIEW

Debtors also agree with matters and authorities set forth by Appellants concerning the appropriate standard of review, that: i) an order granting or denying contempt is reviewed for "abuse of discretion;" ii) a bankruptcy court's findings of fact are reviewed by a district court for "clear error," or if the findings are "clearly erroneous;" and iii) a bankruptcy court's conclusions of law are given complete and independent review by the district court.

## STATEMENT OF THE CASE

Primarily, in this appeal Debtors will rely upon the various Orders of the bankruptcy court:

1) ECF189 – Order precluding contact between Appellants and Debtors;

2) ECF191 – Order precluding Appellant Marglli Gallego, individually and in her capacity as President of the Association, from contact with Debtors;

3) ECF328 – Order finding both Appellants in contempt for the May 15, 2019 altercation in violation of ECF189 and ECF 191, and violating the automatic stay by filing the November 2020 lawsuit against Debtors, based in part on pre-petition conduct;

4) ECF339 – Order awarding attorney's fees and amount of fees, determining entitlement to punitive damages and potentially emotional distress and requiring a further evidentiary hearing;

5) ECF480 – Order entered after the further evidentiary hearing determining entitlement and amount of damages for emotional distress and determining amount of punitive damages, while finding the Association not liable for punitive damages under a theory that a corporation could not be liable for punitive damages of an employee absent further proof against the corporation, and failing to award attorney's fees to Debtors incurred in the further evidentiary hearing; and

6) ECF510 – Order granting rehearing to award attorney's fees to Debtors that were inadvertently omitted from ECF480 and finding that the Association was liable for punitive damages where, under Florida law, a corporation was "directly liable" for the wrongful acts of its managing members such as, in this case, its President, Marglli Gallego.

A review of these Orders will furnish this Court, on review, all the necessary material, including all pertinent findings and conclusions of law at issue in this appeal, as well as citation to all the pertinent testimony and documentary evidence in the record to support all findings and conclusions that rely on certain findings.

Debtors will rely upon the Statement submitted by Appellants, but will provide any further information that was omitted from a particular section of the Appellant's Statement.

## I.  December 2018 Contempt Orders.

On December 4 and December 7, 2018 the bankruptcy court entered two Orders, ECF189 and ECF191, respectively.   The Orders stemmed from an amended motion for contempt filed against both Appellants.  ECF159.  As noted in ECF191 at 2, evidence was presented that "there was a physical threat made against the co-debtor, Leticia Cepero."   As a result, without finding anyone in contempt, the bankruptcy court ordered both the Association and Ms. Gallego to not have any further contact with Debtors.  ECF189, ECF 191.

The purpose of the these two Orders was expressly stated by the bankruptcy court.  After finding that a threat of physical violence had occurred, the bankruptcy court stated that the purpose of ECF191, in addition to the prior Order, was "to prevent any further altercations" between Gallego, individually, and as President of the Association, and the Debtors.  ECF191 at 2.

3

**II.  Joint Representation and Joint Defense of Appellants.**

Throughout the proceeding below, both Appellants were represented by the same trial counsel.  At no time, either during any evidentiary proceeding or in a closing argument or brief on damages did one Appellant take a position against the other Appellant.  For example, at no time did the Association contend that it could not be held liable for the acts of its President Marglli Gallego.  *See* ECF326, Appellants' closing argument.

To the contrary, Appellants put of a joint front as to the events of May 15, 2019 and/or the 2020 lawsuit and maintained that Appellants did nothing wrong.  *Id.*  Further, after the finding of contempt was made against both Appellants [ECF328] Debtors presented their brief on the damages that could be awarded, including punitive damages. ECF335.  In their joint response brief, Appellants never once contended that only Marglli Gallego could be found liable for punitive damages, but not the Association.  *See* ECF337.  As detailed below, in the Argument section, both Appellants always acknowledged joint responsibility, and jointly maintained that they did nothing wrong either as to the May 15, 2019 incident or the November 2020 lawsuit that was immediately dismissed.

During the proceeding to determine contempt and violation of the automatic stay of both Appellants or as to possible sanctions to be imposed as a result of these wrongful acts, **the Association never once contended that it could not be**

**held liable for the wrongful acts of Ms. Gallego and/or that her acts were done**

**outside of her role as the President of the Association**.   Absent such an

argument anywhere in the record at the critical time, any issues regarding the

liability of the Association were not properly preserved.

### III.  The May 15, 2019 Altercation/Incident.

Nowhere in Appellants' closing argument is any argument or suggestion that

the initial contempt Orders [ECF189 and ECF191] did not apply to the matters

alleged regarding the May 15, 2019 altercation.   ECF326.   Appellants jointly

maintained that Marglli Gallego, while operating an Association vehicle, did not

perform the acts alleged in the amended motion for contempt.   Rather, without

filing their own motion for contempt, Appellants contended that Debtors drove to

the school of Ms. Gallego's child, began to follow her and her son, at which time

she called the police while she was scared and nervous, and then Debtors

proceeded to follow her to Association property and blocked her in.

As is detailed in ECF328 at 4-8, the Order of contempt against both

Appellants, the bankruptcy court highlighted and analyzed the critical evidence,

including videos of the incident [Ex. 22/N, 23/M], an audio tape of the 911 phone

call [L/24] and a bank record proving that Debtors could not have been at the

child's school [Ex. 14], and expressly found that Appellants' version of what

occurred was both "false" and "fabricated."

**IV.  Appellants did not object to the Findings and Conclusions in either the Contempt Order [ECF 328] or the Sanctions Order [ECF339].**

The bankruptcy court found that both Appellants were liable for contempt, and any damages for contempt, for the May 15, 2019 incident.  ECF328 at 8.  The Association was found liable where the bankruptcy court concluded, based on the evidence, that Ms. Gallego was driving the Association's vehicle at the time of the incident.  *Id.*  The evidence included statements made by Ms. Gallego on the 911 audio tape [Ex. L/24] where Ms. Gallego explained to the police that she did not live on the property of the Association, that she was the President of the Association and that she was on the property performing an inspection in her capacity as President as the Debtors were allegedly following her.

Through joint counsel, Appellants never filed a motion for rehearing or reconsideration or any other motion challenging the finding that the Association should be held in contempt for the May 15, 2019 incident.  All joint briefing by Appellants suggested that Appellants' version of the events (*e.g.* that Debtors caught up with Ms. Gallego at her child's school, followed her and blocked her in) was true and correct.  ECF326, Appellants closing argument.  Nothing was filed after the entry of the finding of contempt [ECF328] by Appellants or the Association suggesting that Appellant could not be held in contempt for the May 15, 2019 incident, or the November 2020 lawsuit, as well.

After Debtors submitted their brief on damages [ECF335], Appellants filed their joint response.  ECF337.  Nowhere in ECF337 is a suggestion or argument that only one Appellant, but not the other, could be liable for either of the forms of damage – attorney's fees, damages for emotional distress and/or punitive damages. Further, no argument was ever presented that the Association could not be liable for the acts of Ms. Gallego, or that Ms. Gallego acted on her own.

## V.  The November 2020 Lawsuit.

In ¶18 of the Complaint filed in November 2020, Appellants alleged that "Ms. Cepero made false and defamatory statements over the last four years (at a minimum).  Ex. 21 at 3.  ¶¶19 contains allegations of statements made in 2018-2020.  *Id.*  ¶20 alleges false statements made about falsified checks, but no date of the alleged conduct is provided.  *Id. At 3-4.*  ¶21 alleges undated conduct of holding signs in front of the office.  *Id. At 4.*  ¶22 describes allegations of false statements made in the months leading up to the 2020 board elections.  *Id.*

¶¶23-26, without any differentiation, alleges that all of the false statements allegedly made by Ms. Cepero, including those made "over the last four years (at a minimum)" were: i) designed to tarnish the reputations of Ms. Gallego and the Association [¶23]; ii) made in bad faith and with a malicious purpose [¶24]; iii) interfering with the Association's business [¶25]; and iv) interfered with the business of Ms. Gallego [¶26].  *Id. At 4-5.*

7

¶27 alleges that as a result of the wrongful conduct of Ms. Cepero, "the police opened an investigation in Hammocks Community Association, Inc. and Ms. Gallego **which has been ongoing for the past four years**. *Id. at 5*. [Emphasis added]. Each of these allegations, including the allegation of false statements being made for the past four years or more, and the police investigation "which has been ongoing for the past four years" was re-alleged in each of the three counts for damages. *See* ¶35, introduction to Defamation count; and introductory, un-numbered paragraphs as to Counts II and III. *Id. at 6, 7 and 9*.

Further, as noted by Appellants, while contending nothing improper in the filing of the November 2020 lawsuit, said lawsuit was dismissed the November 2020 lawsuit two weeks after it was filed. I. Brf. At 8. The bankruptcy court found that "[o]nce advised of this bankruptcy case, state court counsel immediately dismissed the November 2020 Lawsuit." ECF328 at 9.

**VI. The bankruptcy court, having found both Appellants in contempt and for violating the automatic stay, ordered a final evidentiary hearing to "hear evidence on emotional distress damages and the ability of Ms. Gallego and the Association to pay punitive damages" – with entitlement to punitive damages against <u>both</u> Appellants having already been determined.**

After finding Appellants in contempt and liable for violation of the automatic stay [ECF328], the bankruptcy court entered an Order on Sanctions. ECF339. The Order on Sanctions directed the parties to appear at a final evidentiary hearing to receive evidence of damages for emotional distress

sustained by the Debtors and to determine both Appellants ability to pay punitive damages:

> e.  The Court will conduct an evidentiary hearing on December 30, 2021, at 9:30 a.m. to hear evidence on emotional distress and the ability of Ms. Gallego **and the Association to pay punitive damages**." ECF339 at 11. [Emphasis added].

Thus, in ECF339, the bankruptcy court, having already determined that both Appellants were in contempt and violated the automatic stay, found both Appellants liable for: i) attorney's fees; ii) emotional distress, if such damages were proven; and iii) punitive damages.  More importantly, the Association's liability for some measure of punitive damages, depending upon its ability to pay, was a given and was not in any doubt or controversy at the December 30, 2021 hearing on damages.  Additionally, having awarded entitlement and determining the amount of attorney's fees for time expended at the contempt/stay violation hearing in ECF339, Debtors' entitlement to attorney's fees expended at the December 30, 2021 hearing was a given, as well.

**A.  Rehearing was granted where the bankruptcy court inadvertently failed to award Debtors' attorney's fees for the December 2021 proceeding; and, where for failing to assess punitive damages against the Association.**

In ECF480, the bankruptcy court awarded damages against both Appellants for $25,000.00 as damages proven by Debtors for emotional distress.  However, the court failed to award attorney's fees to Debtors.  Additionally, the court found that, based upon *Mercury Motors Exp., Inc. v. Smith*, 393 So. 2d 545, 549 (Fla.

9

1981), analyzing liability of a corporation for punitive damages for the acts of a

corporate <u>employee</u>, quoting:

> Before an employer may be held vicariously liable for punitive damages
> under the doctrine of respondeat superior, there must be **some fault on his
> part.** . . . Although the misconduct of the employee, upon which the vicarious
> liability of the employer for punitive damages is based, must be willful and
> wanton, it is not necessary that the fault of the employer, independent of his
> employee's conduct, also be willful and wanton. It is sufficient that the
> plaintiff allege and prove some fault on the part of the employer which
> foreseeably contributed to the plaintiff's injury to make him vicariously liable
> for punitive damages.  ECF 480 at 10 [Emphasis provided by this Court].

The Court went on to state, in concluding that only Ms. Gallego, but not the

Association, should be liable for punitive damages, that:

> While Ms. Gallego was **an officer** of the Association, **rather than an
> employee, there does not appear any reason why the analysis should be
> different**.  The Debtors did not put on evidence that would support a finding
> that the Association acted or did not act in [a] way that "foreseeably
> contributed" to the Debtors' injuries.   Therefore the Court finds the
> Association not liable for punitive damages awarded to the Debtors. *Id.*
> [Emphasis added].

Debtors timely filed a motion to amend the judgment and/or for rehearing.

ECF489.  Regarding punitive damages, Debtors argued that the bankruptcy court

erred in two respects: 1) the Association's liability for punitive damages had

already been determined in the Sanctions portion of the proceeding; and 2) under

Florida law, the Association was "directly liable" for punitive damages of its

President, who was not a mere "employee,"  citing to *Schropp v. Eurocars*, 654 So.

2d 1158, 1159-1160 (Fla. 1995), expressly noting the difference between vicarious

liability for acts of an employee (additional evidence of corporate fault needed) and "direct liability" for the wrongful acts of a managing officer, such as a president (no such additional evidence needed).

The bankruptcy court agreed with both arguments of the Debtors and granted rehearing to alter the damage award to find that the Association was liable for punitive damages.  ECF510.  The bankruptcy court expressly found that: i) liability for punitive damages had already been determined, and had not been challenged; and ii) *Schropp* was a correct statement of law regarding direct liability for punitive damages for wrongful acts of a president or controlling member.  *Id.* at 5.  The bankruptcy also awarded Debtors their attorney's fees, as well.  *Id.*

## **ISSUES PRESENTED**

Appellants have presented five issues on appeal: 1) the original orders of contempt were vague and did not sufficiently apprise Appellants that the conduct of May 15, 2019 would constitute a violation of the contempt orders; 2) the order on appeal finding Appellants in contempt for violating the original orders of contempt by committing the acts at issue on May 15, 2019 was not supported by sufficient evidence; 3) the Association was not guilty of any contempt on May 15, 2019 for the wrongful acts committed by its President, Marglli Gallego; 4) the 2020 lawsuit by Appellants against Leticia Cepero was not a violation of the automatic stay; and 5) the bankruptcy court erred in granting Debtors' motion for

rehearing, finding the Association jointly liable with Ms. Gallego for punitive damages where Ms. Gallego was the President of the Association.

## SUMMARY OF THE ARGUMENT

The original contempt orders so very clearly prohibited the type of conduct alleged and proved regarding the May 15, 2019 altercation. The bankruptcy court expressly forbade the parties from any further contact with each other. Any argument to the contrary is devoid of merit. Further, Appellants never made any such an argument (that the initial contempt orders did not apply to matters proven regarding the May 15, 2019 incident/altercation) in the proceeding below.

Similarly, where the bankruptcy court, relying upon audio, video and documentary evidence completely contradicting Appellants' version of the events of May 15, 2019 to the point of concluding that Appellants' version was "false" and "fabricated," there is ample evidence to support the finding of contempt. Appellants cannot demonstrate that the findings are clearly erroneous or that the bankruptcy court somehow abused its discretion.

Through a joint representation in presenting false and fabricated claims, the Association never once contended in the proceeding below that it was not responsible for the actions of its President, Marglli Gallego. Appellants always maintained, together, that they did nothing wrong. At no time, did the Association ever contend that Ms. Gallego acted on her own. As such, this particular issue was

waived.   Further, Ms. Gallego, in addition to driving a vehicle owned by the Association during the May 15, 2019 altercation, provided statements to the police during the 911 call admitted into evidence claiming that she was doing an inspection for the Association in her role as President of the Association when the said altercation occurred.

The November 2020 lawsuit, immediately dismissed once Appellants' state court counsel learned of Ms. Cepero's 2017 bankruptcy proceeding, clearly involves allegations of pre-petition conduct on the part of Ms. Cepero.  Several allegations concern conduct occurring in the past four years, and these allegations were re-alleged in each Count for damages.  Appellants cannot show any error.

The bankruptcy court did not err in finding the Association liable for punitive damages.  The Association does not contest, on appeal, its liability for attorney's fees or the $25,000.00 for emotional distress damages.   As correctly found by the bankruptcy court, the Association was found in contempt and liable for punitive damages, subject to a determination of its ability to pay; and, the Association never contested these determinations.  The "direct liability" as stated by the Florida Supreme Court in *Schropp* is the correct standard of law to misconduct by a corporation's president.

Finally, having violated the automatic stay a second time, first with the 2017 lawsuit followed by the November 2020  lawsuit, the bankruptcy court was

presented with an additional and sufficient basis to assess punitive damages against the Association.

## **ARGUMENT**

### **I.  The initial contempt orders clearly prohibited the type of confrontation found to have occurred during the May 15, 2019 incident.**

Contrary to Appellants' contentions, the entirety of the original contempt orders are clear and unambiguous.  The bankruptcy court had found that both the Association and Ms. Gallego had committed previous wrongs against the Debtors, and enjoined both Appellants from any further contact:

> The Contempt Orders made clear that the Association and Ms. Gallego on the one hand, and the Ceperos on the other hand are not to talk about each other **or interact with each other**.  ECF328 at 12.  [Emphasis added].

The initial contempt order expressly directed the Association and Ms. Gallego to "refrain from **any further contact** with the Debtors."  ECF189 at 2. [Emphasis added].  The other initial contempt order noted a physical threat made against Mrs. Cepero and directed that Ms. Gallego "shall refrain from further contact with the Debtors."  ECF191 at 2.  The bankruptcy court expressed the reason for prohibitions against further contact with the Debtors was "**to prevent any further altercations**."  *Id.*  [Emphasis added].

In finding Appellants in contempt for their actions, the bankruptcy court began its analysis by stating: "At issue before this Court is whether the Respondents violated the Contempt Orders by virtue of the **May 15, 2019**

**altercation**."  ECF328 at 3.  The bankruptcy court used the term "altercation" two additional times.  *Id. at 5, 7.*  Appellants choose to call what happened on May 15, 2019 an "incident."  The Initial Brief is replete with the term.

Regardless of the terminology, the bankruptcy court made it abundantly clear that both the Association and Ms. Gallego were forbidden from engaging in any contact or interaction with the Debtors, and the "confrontation" or "incident" that occurred on May 15, 2019 was the precise situation the bankruptcy court sought to avoid.  Any argument of Appellants, through the use of definitions of various words, that the original contempt orders did not apply to the matters proven by Debtors to have occurred on May 15, 2019 is absolutely meritless.

**A.  Appellants waived this issue by failing to raise same below.**

As to this first issue, a review of the Appellants' closing argument [ECF325] reveals that this issue was never presented to the bankruptcy court.  At no time did Appellants contend that the original contempt orders were vague and did not apply to the conduct at issue occurring on May 15, 2019; or that the original contempt orders only applied to Ms. Gallego, but not the Association, as it related to the matters occurring on May 15, 2019.

Appellants did expressly contend that the initial contempt orders did not preclude **the filing of the November 2020 lawsuit** in the closing argument:

  17.  The Contempt Orders did not contain any prohibition **as to legal actions** by "clear, definite and unambiguous" terms.  ECF325 at 7.

However, no such contention was presented at trial by Appellants **as to the May 15, 2019 incident**. Instead, Appellants, jointly through the same counsel, steadfastly maintained they did nothing wrong, and further maintained, without filing a motion for contempt, that the Debtors actually violated the initial contempt orders by following Ms. Gallego – a claim thoroughly debunked.

As such, Appellants waived this issue by failing to make the arguments presented on appeal to the bankruptcy court.   *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).

**II.  The bankruptcy court did not abuse its discretion in finding Appellants in contempt for the May 15, 2019 altercation, and Appellants cannot possibly show that the bankruptcy courts findings were clearly erroneous.**

Appellants' second issue, regarding the sufficiency of the evidence to support the finding of contempt for committing the acts on May 15, 2019, is equally meritless. A video admitted into evidence conclusively proved, by clear and convincing evidence, that Ms. Gallego, in an Association vehicle, drove said vehicle in a manner that blocked Debtors' vehicle.  Further, a bank record admitted into evidence conclusively demonstrated, by clear and convincing evidence, that Appellants' version of the events – that the Debtors improperly followed Ms. Gallego at a school where she was picking up her son – was completely false and fabricated by Appellants.

This Court need only review the very detailed findings of the bankruptcy court regarding the confrontation that occurred on May 15, 2019 along with its references to the record evidence to conclude that Appellants cannot possibly demonstrate any abuse of discretion.  ECF328 at 4-8.  Appellants have not and cannot possibly demonstrate that these findings were clearly erroneous.

Appellants continue to advance their own version of the events of May 15, 2019 on appeal.  *See I. Brf. at 29-35.*  The version laid out by Appellants in this section of the Initial Brief, predicated upon testimony of Ms. Gallego, is the exact version that was debunked during the trial, and expressly found by the bankruptcy court to be false and fabricated to the point that Ms. Gallego's entire testimony was disregarded by the bankruptcy judge, stating:

> In sum, the Court finds that Ms. Gallego **was untruthful, her testimony fabricated and contradicted by physical evidence**.  Consequently, the Court finds that **all** of Ms. Gallego's testimony should be **disregarded**.  ECF328 at 8. [Emphasis added].

The bankruptcy judge, after careful consideration of the testimony, the video evidence and documentary evidence, concluded with a proper foundation that Appellants' version was both completely false and fabricated on several different factual disputes including: i) whether Debtors followed Ms. Gallego from her child's school; ii) the point in time when Ms. Gallego telephoned the police; and iii) whether Debtors, as claimed by Appellants, actually obstructed Ms. Gallego's movement in the Association's vehicle at the critical time.

**III.  Appellants, through joint counsel, never claimed that the Association was not liable for contempt for the acts of its President, Marglli Gallego, and waived this issue or invited error.**

For the first time on appeal, the Association contends that it is not liable for contempt for the wrongful acts of its President during the May 15, 2019 altercation while she was operating a vehicle owned by the Association.   The record shows that Appellants – the Association and its President, Marglli Gallego – were represented at all times by the same counsel.  Both Appellants, through one counsel, always maintained that Appellants, together, simply did not violate the original contempt orders on May 15, 2019, and that they did nothing wrong.

At no time did the Association contend that the matters alleged regarding the May 15, 2019 incident only applied to Ms. Gallego, but not the Association.   A review of their joint closing argument reveals that both Appellants steadfastly maintained the version of Ms. Gallego and the Association's security officer were true and correct.  ECF325 at 1-7.  In the joint closing argument of Appellants, following the conclusion of the evidentiary proceedings relative to contempt by Appellants for acts committed on May 15, 2019, Appellants argued:

> The evidence does not clearly or convincingly demonstrate that **Respondents** violated the Orders of this Court, nor does it clearly or convincingly demonstrate that **Respondents** initiated contact with the Debtors on May 15, 2019.  *Id.* at 7.  [Emphasis added].

At no time did the Association contend that, even if the bankruptcy court concluded that Ms. Gallego committed wrongful acts, the bankruptcy court could

18

not find the Association liable for such acts.  To the contrary, Appellants, through joint counsel, always **acknowledged their joint liability** for the May 15, 2019 incident, writing:

> This Court found that Respondents [Appellants] violated this Court's "stay away" orders by blocking debtors' vehicle as they drove in front of the building where Respondent Marglli Gallego resides . . . In the first instance, the debtors' car was impeded by **Respondents' vehicle**. . .Further Debtors' counsel failed to offer any evidence as to the motives of **Respondents in committing the act**.  ECF337 at 12 [Emphasis added].

As the argument goes on appeal, the Association contends to this Court on review that no evidence was presented that Ms. Gallego was acting within the "scope of her position with the Hammocks" as President of the Association on May 15, 2019, and the Association cannot be held liable "solely based on Ms. Gallego's acts during the incident." *See I. Brf. at 35-36*.  However, the record clearly indicates that **at no time** prior to the finding that the Association was in contempt for the said incident did the Association ever once present the arguments to the bankruptcy court now presented to this Court on appeal.

Additionally, the Association never once challenged the finding of contempt of the Association for its role in the May 15, 2019 incident by way of a motion for rehearing or other challenge.  After the bankruptcy court found both Appellants in contempt for the May 15, 2019 altercation, the bankruptcy court then required further briefing on the type of sanctions to be awarded.  ECF328 at 11.  In the joint brief by Appellants, the Association never once raised any issue that only Ms.

Gallego, but not the Association, could possibly be sanctioned; but, instead, conceded that both Appellants were liable.  ECF337, quoted above.

No argument resembling the argument presented on appeal can be found in either Appellants' closing argument on contempt [ECF325] or Appellants' objections to sanctions to be awarded [ECF337].  The bankruptcy court found that the Association never challenged the finding that the Association was liable for contempt for the May 15, 2019 incident, as well:

> Since the Court already found the Association to be directly liable for punitive damages in its *Order Finding Hammocks Community Association, Inc. and Marglli Gallego in Contempt* [ECF#328], and that the Association is directly liable for punitive damages, **which findings have never been challenged by the Association**, based on *Schropp* [discussed below], the Association is jointly and severally liable with Ms. Gallego for punitive damages.  ECF480 at 5.  [Emphasis added].

The Association cannot now be heard, on appeal, to present matters that were not presented timely before the bankruptcy court.  It is elementary that an argument not presented in the trial proceeding is waived on appeal.  *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).

> Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court. State v. Jones, 377 So.2d 1163 (Fla. 1979); State v. Barber, 301 So.2d 7 (Fla. 1974); Silver v. State, 188 So.2d 300 (Fla. 1966); Dukes v. State, 3 So.2d 754, 148 Fla. 109 (1941). Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below. Haager v. State, 83 Fla. 41, 90 So. 812, 813 (1922); Kelly v. State, 55 Fla. 51, 45 So. 990 (1908); Camp v. Hall, 39 Fla. 535, 22 So. 792 (1897); Black v. State, 367 So.2d 656 (Fla. 3d DCA 1979).

Further, under the rule of invited error, a party may not make or invite error at trial and then take advantage of the error on appeal.  *Baker v. R.J. Reynolds Tobacco Co.*, 158 So. 3d 732 (Fla. 4th DCA 2015).  Appellants could have been represented by separate counsel, with the Association perhaps claiming that Marglli Gallego acted on her own, but simply did not do so.

**A. Even if the issue was not waived, the bankruptcy court was presented with sufficient evidence of the Association's involvement in the May 15, 2019 incident where Marglli Gallego told the police she was driving a Hammocks vehicle doing an inspection as the President at the time of the incident.**

During the trial, an audio of Ms. Gallego's 911 call to the police was played. In that call, in response to what she was doing at the property, if she did not live there,  Ms. Gallego responded:

No, no, no, **I'm in my... in Hammocks car because I'm the president. So, I'm making the inspection** and these people is following me and recording me, and they almost...He tried to hit me in the car. Ex. L/24. [Emphasis added].

Again, the Association could have had separate counsel to perhaps claim that Ms. Gallego's testimony and statements to the police were false.  However, instead, Appellants relied on joint counsel and acknowledged that if one was liable, both were liable.

This issue is related to Appellants' final issue concerning the bankruptcy court's granting of rehearing and finding that the Association was directly

responsible, as a matter of Florida law, for punitive damages for the acts of its President, Marglli Gallego.  This is discussed further below.

**IV.   The bankruptcy court's conclusion that the November 2020 lawsuit violated the automatic stay was correct where Appellants sued Leticia Cepero for matters that included pre-petition acts.**

Appellants' fourth argument that their November 2020 lawsuit against Leticia Cepero is not a violation of the automatic stay, because that lawsuit only concerns post-petition acts is false and lacks any merit.  In ¶18 of the Complaint, Appellants alleged that "Ms. Cepero has made false and defamatory statements **over the last four years (at a minimum)** . . ."  Ex. 21 at 3.  [Emphasis added]. Further, In ¶27 of the Complaint, Appellants alleged that as a result of Ms. Cepero's conduct, "the police opened an investigation into Hammocks Community Association, Inc. and Ms. Gallego, **which has been ongoing for the past four years**."  Ex. 21 at 5.  [Emphasis added].

The allegations in both ¶¶18 and 27 are re-alleged three times to support each count for damages: i) in ¶35 to support Count I (Ms. Gallego's defamation claim); in the introductory, unnumbered paragraph to support Count II (Association's defamation claim); and in the introductory, unnumbered paragraph to support Count III (Association's claim for tortious interference).  *Id.* at 7-9. Thus, the lawsuit clearly involves pre-petition conduct upon which each count for damages is based since the bankruptcy of Debtors was opened in 2017.

Appellants' argument on appeal that "[t]he court refused to determine whether the claims arose pre or post-petition based on the foregoing" [I. Brf. at 39] is absolutely false.  The bankruptcy court analyzed the allegations in the Complaint and properly concluded that the November 2020 lawsuit violated the automatic stay, because it was based, in part, upon pre-petition conduct.  ECF328 at 8-10:

> In the November 2020 Lawsuit, the Respondents sued Mrs. Cepero for a variety of acts, some of which occurred postpetition.  However, the complaint clearly included allegations, and sought relief with respect to, "false and defamatory statements over the last four years (at a minimum) about Ms. Gallego." . . . While there are certain instances in which acts to recover on claims that arise postpetition are not a stay violation, the Court does not have to address those exceptions here **because the November 2020 lawsuit included relief relating to prepetion claims**.  [Emphasis added].

Further, even if the November 2020 lawsuit was entirely based on post-petition conduct (which it was not), the Appellants would have to look to the bankruptcy estate of the Debtors to seek satisfaction, and Debtors would have to dip into assets of the bankruptcy estate to defend against the lawsuit, as well.

**A.  If the November 2020 Lawsuit was not a violation of the automatic stay, Appellants cannot answer why, as found by the bankruptcy court, "[o]nce advised of this bankruptcy case, state court counsel immediately dismissed the November 2020 Lawsuit."**

Additionally, if the November 2020 lawsuit did not violate the automatic stay, the record is clear that Appellants immediately dismissed the lawsuit when the attorney filing said lawsuit learned about Ms. Cepero's pending bankruptcy. ECF328 at 9, bankruptcy court expressly finds that Appellants' state court counsel

immediately dismissed the lawsuit, "[o]nce advised of this bankruptcy case."  If the lawsuit was not a violation of the automatic stay, as contended by Appellants, why was it immediately dismissed?

**V.  The Association is directly liable for punitive damages as a matter of law.**

Finally, regarding the final issue presented, Florida law is clear that a corporation, such as the Association, is directly liable for damages and punitive damages the acts of its President.  Ms. Gallego was not merely an employee; rather, she was the **President** of the Association.  Appellants' arguments are replete with matters concerning the liability of a corporation [*e.g.* the Association] for the acts of either a mere "employee" or "agent," always forgetting that Marglli Gallego was the **President** of the Association.

While presenting a statutory argument based on §768.72(3), Florida Statutes, Appellants readily concede that "direct liability" applies under Florida law, and cite to an authority stating that the "direct liability approved in *Schropp* is preserved by §768.72(3)."  *See I. Brf. at 42.*

In *Schropp v. Eurocars*, 654 So. 2d 1158,  1159-1160 (Fla. 1995), the Florida Supreme Court expressly noting the difference between vicarious liability for acts of **an employee** (additional evidence of corporate fault needed) and "direct liability" for the wrongful acts of a managing agent, such as a President (no such additional evidence needed):

A review of the case law in Florida reveals two methods have been established by which a corporation may be held liable for punitive damages: (1) vicarious liability based on the willful and malicious actions of an employee with a finding of independent negligent conduct by the corporation; or (2) <u>direct liability based on the willful and malicious actions of managing agents of the corporation</u>.  [Emphasis added].

The Florida Supreme Court then discussed the difference between the two methods, discussing *Mercury Motors*, and noting that its prior decisions involving "direct liability" for punitive damages against a corporation for acts of it managing agent are different than "vicarious liability" where punitive damages are sought against a corporation for the acts of a mere employee.  In the latter of such cases, evidence of wrongful conduct of the corporation is required; but in the former, no such additional evidence is required – corporate liability for punitive damages is **<u>direct</u>** for the wrongful acts of **<u>a president of a corporation</u>**.  *Id.* at 1159-1160:

Corporate Vicarious Liability for Punitive Damages

In *Mercury Motors Express, Inc. v. Smith*, 393 So. 2d 545 (Fla. 1981), an employee of Mercury Motors Express lost control of his tractor-trailer rig while acting in the scope of his employment and killed a man. The personal representative of the decedent brought suit against the employer and alleged that it was vicariously liable for the willful and wanton acts of its employee. This Court held that, although a corporate employer could be vicariously liable for punitive damages caused by the willful and wanton acts of an employee, there must be some independent fault on the part of the corporate employer. Because the plaintiff had failed to allege any independent fault on the part of Mercury Motors Express, we quashed the district court's decision that had approved an award of punitive damages in the trial court. In stating the requisite degree of fault that would subject an employer to vicarious liability for punitive damages, we stated the following rule:

> Although the misconduct of the **employee**, upon which the vicarious liability of the employer for punitive damages is based, must be willful and wanton, it is not necessary that the fault of the employer, independent of his employee's conduct, also be willful and wanton. **It is sufficient that the plaintiff allege and prove some fault on the part of the employer which foreseeably contributed to the plaintiff's injury to make him vicariously liable for punitive damages**.

*Id*. at 549. Under this theory, a plaintiff must (a) establish that the conduct of the employee was willful and wanton and (b) establish some fault on the part of a corporate employer in order to support a claim of vicarious liability against the corporate employer for punitive damages. We emphasize that under this theory it is not necessary for the plaintiff to establish that the corporate employer acted with the same heightened culpability as the employee to allow punitive damages. It is sufficient if the plaintiff establishes ordinary negligence on the part of the corporate employer.

Corporate **Direct Liability** for Punitive Damages

In *Bankers Multiple Line Insurance Co. v. Farish*, 464 So. 2d 530, 533 (Fla. 1985), **we discussed the second basis for corporate punitive damages liability, direct corporate liability, and expressly distinguished the vicarious liability theory set forth in *Mercury Motors***. In Bankers, **the president of an insurance company**, together with another managing officer of the insurer, encouraged a client of Farish to discharge Farish as the client's attorney and seek other counsel. The attorney sued the insurance company as well as the president of the insurer in his individual capacity. The jury returned a verdict in favor of the attorney against the insurer, including both compensatory and punitive damages, but found in favor of the president of the insurer and refused to award damages for his personal actions. This Court approved the award of punitive damages against the insurer because of the evidence of culpability on the part of the other corporate managing officer of the insurer apart from the actions of the president. Although we never used the specific terminology, **it is apparent that the insurer was liable for punitive damages based on its own direct liability through the actions of its other managing officer and not on the basis of vicarious liability**.

Shortly after our decision in *Bankers*, we again had an occasion to discuss the direct corporate liability theory for punitive damages in *Winn-Dixie Stores, Inc. v. Robinson*, 472 So. 2d 722 (Fla. 1985). In *Winn-Dixie*, the plaintiff sued

26

for false imprisonment, malicious prosecution, and conversion when he was falsely detained and accused of shoplifting. The facts established that the plaintiff's detention and arrest were expressly approved by an assistant manager of that store. The trial court granted Winn-Dixie's motion for directed verdict on the issue of punitive damages on the basis that the store could not be held vicariously liable under the rule in Mercury Motors. The district court reversed that ruling, finding liability for punitive damages and concluding that the rule in Mercury Motors was not an issue in the case. We affirmed that portion of the district court's decision and stated:

> Most recently in *Bankers Multiple Line Insurance Co. v. Farish*, 464 So. 2d 530 (Fla. 1985), **we expressly held that *Mercury Motors* was not intended to apply to situations where the agent primarily causing the imposition of punitive damages was the managing agent or primary owner of the corporation**. We also hold that Mercury Motors is not applicable in the present case where the suit was tried on the theory of the direct liability of Winn-Dixie, and the jury, by special verdict, decided that Winn-Dixie should be held directly liable for punitive damages. [Emphasis added].

Debtors respectfully submit that the Florida Supreme Court has expressly differentiated corporate liability for punitive damages where the acts, as here, are caused by a managing agent – in this case, the Association's President, Ms. Gallego.  Thus, Appellants' reliance upon arguments and authorities based upon acts of a mere agent or employee are wholly inapplicable.

**A.  As conceded by Appellants, §768.72 does not modify or eliminate "direct liability" where the wrongful acts are committed by a corporation's president, and *Shropp* is still followed by Florida appellate courts.**

As noted above, Appellants cited to a Florida Bar Journal article that concludes that "direct liability approved in *Schropp* is preserved by §768.72(3)." Further, in 2021, the Fifth District relied upon and reiterated the principles in

*Schropp* in *Wells Fargo Bank, N.A. v. Elec. Funds Transfer Corp.*, 326 So. 3d 754, 758 (Fla. 5th DCA 2021), stating:

> In Florida, there are two methods for establishing a claim for punitive damages against a corporation: "(1) vicarious liability based on the willful and malicious actions of an employee with a finding of independent negligent conduct by the corporation; or (2) **direct liability based on the willful and malicious actions of managing agents of the corporation**." *Schropp v. Crown Eurocars, Inc., 654 So. 2d 1158, 1159 (Fla. 1995)*.  Because the jury found for Wells Fargo on the vicarious liability theory, we confine our analysis to the direct liability theory.
>
> In order to prevail on a direct liability theory, EFT was required to establish that Cucci was a "managing agent" or held a policy-making position at Wells Fargo. *See id. at 1161*. **A "managing agent" is an individual such as a president**, primary owner, or other individual who holds "a position with the corporation which might result in his acts being deemed the acts of the corporation." *Fla. Power & Light Co. v. Dominguez, 295 So. 3d 1202, 1205 (Fla. 2d DCA 2019)* (quoting *Taylor v. Gunter Trucking Co., 520 So. 2d 624, 625 (Fla. 1st DCA 1988)*); *see also Kent Ins. Co. v. Schroeder, 469 So. 2d 209, 210 (Fla. 5th DCA 1985)* ("**[B]y virtue of his position as corporate president** of Gags and the manager of the bar owned by Gags, the acts of McElfish are indistinguishable from the acts of the corporation itself."); Ted C. Craig & Christopher N. Johnson, *When Is A Manager A Managing Agent*?, Fla. B.J., January 2001, at 62 ("[T]he body of [Florida] decisions on this issue consistently requires employees to exercise high-level, policymaking authority before they can expose their corporate employers to direct liability for punitive damages.").  [Emphasis added].

*See also Rosenberg v. DVI Receivables, XIV, LLC*, 471 B.R. 307, 313 (Bktcy. S.D. Fla. 2012), citing to *Schropp* (corporation "directly liable" for damages, including punitive damages, for the acts of its managing agents).

Thus, the law is clear in Florida that the Association is directly liable for punitive damages for the wrongful acts of its President, Marglli Gallego, and that

law has not changed with the adoption of §768.72 as indicated in *Wells Fargo*, citing to other recent authorities on the subject.

**B.  The Association never really contested its liability for damages, aside from punitive damages, and the Association does not and cannot contest its liability for punitive damages for instituting the November 2020 lawsuit – so the punitive damage award is proper anyway.**

Even if direct liability could somehow not apply, the Association never really contested its liability for attorney's fees and other damages for the two aspects of the contempt order at issue – the May 15, 2019 incident and filing of the November 2020 lawsuit.  As stated in *Rosenberg*, if a president's wrongful acts exposes the corporation to direct liability for damages, the corporation is also responsible for any punitive damages.  It would make no sense for the Association to be liable for attorney's fees and damages for emotional distress as a result of the May 15, 2019 incident, but not punitive damages, as contended by the Association.

Further, Debtors proved the filing of a prior lawsuit in 2017 involving similar allegations to the November 2020 lawsuit, and that this 2017 lawsuit was dismissed that violated the automatic stay.  As such, Debtors were entitled to punitive damages for the filing of the November 2020 lawsuit **after the Association knew it could not file such lawsuits against the Debtors**.  The bankruptcy court found the Association willfully violated the automatic stay by filing a second lawsuit, stating:

29

The Respondents argued that Ms. Gallego did not know that she could not file the November 2020 Lawsuit. However, **the Respondents filed a postpetition lawsuit in 2017** against the Debtors and others, **seeking similar relief for prepetition acts**. That lawsuit was dismissed as to the Debtors as a violation of the automatic stay. Ms. Gallego testified she did not remember that lawsuit, but, in light of Ms. Gallego's false testimony on other issues in the case, the Court does not believe that Ms. Gallego did not remember.

Accordingly, the Court finds that Respondents knew that they could not file any lawsuit against the Ceperos at least with respect to matters that occurred before the bankruptcy case was filed, and were on notice that filing any lawsuit while the bankruptcy case was pending might be prohibited. Thus, the Court finds **the Association** and Ms. Gallego **willfully violated the automatic stay** by filing the November 2020 Lawsuit. ECF328 at 10-11. [Emphasis added].

The purpose of punitive damages is to punish and prevent future similar misconduct. Here, the Association filed a lawsuit in 2017, and dismissed it because of a violation of the automatic stay. Then, the Association essentially re-filed a similar lawsuit in November 2020, with knowledge that such lawsuit was not permitted by law. Under the circumstances, punitive damages against the Association **for the filing of the November 2020** lawsuit are proper.

## CONCLUSION

For all the reasons stated above, Appellants have failed to demonstrate any reversible error by the bankruptcy court, and the decision of the bankruptcy court should be affirmed in all respects.

Respectfully submitted,

Law Office of Michael J. Brooks
Attorney for Debtor

8660 West Flagler
Miami, FL 33144
Telephone 877-290-9197
Facsimile 954-623-6125
mbrooks@bankruptcynow.com

By: */s/ Michael J. Brooks*
Michael J. Brooks
Florida Bar No. 434442

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing was filed and sent via electronic filing using CM/ECF system with the Clerk of the Court which sent email notification to all CM/ECF participants in this case on this 19th day of December, 2022.

By: */s/ Michael J. Brooks*
Michael J. Brooks

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the Answer Brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because it contains 8,026 words, excluding the parts of the brief exempted by Rule 8015(g), and is produced using the font Times New Roman, 14-point type, including footnotes. Counsel relies on the word count of the computer program used to prepare this brief.

By: */s/ Michael J. Brooks*
Michael J. Brooks

31