# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

Appeal Case No. 22-22686-Civ-Scola
Bankruptcy Case No. 17-20358-LMI (Chapter 13)

_____

HAMMOCKS COMMUNITY ASSOCIATION INC.
and MARGLLI GALLEGO,

Appellants,

v.

JOSUE CEPERO and LETICIA CEPERO,

Appellees.

_____

## HAMMOCKS COMMUNITY ASSOCIATION INC.'S
## REPLY BRIEF

_____

**Melanie E. Damian** (FBN: 99392)
**Kenneth D. Murena** (FBN: 147486)
**DAMIAN VALORI CULMO**
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Email: mdamian@dvllp.com
Email: kmurena@dvllp.com

*Counsel for the Honorable David M. Gersten (Retired), as Court-appointed Receiver of the Hammocks Community Association Inc.*

**Eric R. Thompson** (FBN 888931)
**GORDON REES**
**SCULLY MANSUKHANI LLP**
Miami Tower
100 SE Second Street, Suite 3900
Miami, Florida 33131
Telephone: (305) 428-5300
Facsimile: (877) 634-7245
Email: ethompson@grsm.com

*Counsel for the Honorable David M. Gersten (Retired), as Court-appointed Receiver of the Hammocks Community Association Inc.*

## **TABLE OF CONTENTS**

I.      PREFACE ..................................................................................................1

II.     CLARIFYING THE RECORD ON APPEAL .................................................2

        A.      Who is Gallego? ..............................................................................2

        B.      Historical Perspective ......................................................................2

                1.      The 2018 Motions for Contempt .............................................2

                2.      The Contempt Orders .............................................................3

                3.      The May 2019 Incident ...........................................................3

                4.      The First Evidentiary Hearing ................................................4

                5.      The 2020 Lawsuit ...................................................................5

                6.      The July 2021 Contempt Order ...............................................5

                7.      The October 2021 Order on Sanctions ....................................6

                8.      December 30, 2021: The Evidentiary Hearing .........................7

                9.      The Order on Damages ...........................................................9

                10.     Appellees' *Schropp* Motion .................................................10

                11.     The *Rosenberg* Memorandum .............................................10

                12.     The July 14, 2022 Hearing ....................................................10

III.    ARGUMENT ..........................................................................................12

        A.      The Correct Statement of the Law .................................................12

                1.      Corporate Liability, Generally ..............................................12

                2.      Vicarious vs. Direct Liability: An Inapposite Distinction ........14

                        a.      Syllogism ..................................................................14

        B.      The Correct Law + The Evidence = No Association Liability ..........16

1.   Even the Bankruptcy Court Grasped the Personal  Nature
of Gallego's Actions ..................................................................17

2.   The Gossamer Hook Upon Which the Bankruptcy
Court's Order Hangs Its Hat ....................................................18

C.   Appellees' Waiver Argument is Incontrovertibly Refuted by
This Record ...........................................................................................20

1.   Further Refutation of Appellees' Waiver Postulation .............21

IV.   CONCLUSION...............................................................................................21

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**Cases**

*Archer v. State*,
    613 So. 2d 446 (Fla. 1993)....................................................................21

*Bankers Multiple Line Ins. Co. v. Farish*,
    464 So. 2d 530 (Fla. 1985)....................................................................15

*Fields v. The Devereux Foundation, Inc.*,
    244 So. 3d 1193 (Fla. 2d DCA 2018) ...................................................12

*Kent Ins. Co. v. Schroeder*
    469 So. 2d 209 (Fla. 5th DCA 1985) ............................................. 12, 13

*Martin v. United Sec. Services, Inc.*,
    373 So. 2d 720 (Fla. 1st DCA 1979) .....................................................19

*Mercury Motors Exp., Inc. v. Smith*,
    393 So. 2d 545 (Fla. 1981)........................................................ 9, 10, 14

*Perez v. State*,
    919 So. 2d 347, 359 (Fla. 2005)............................................................21

*Ranger Construction Industries, Inc. v. Allied World Nat'l Assurance Co.*
    2019 WL 13090449 (S.D. Fla. 2019) ............................................. 14, 15

*Rosenberg v. DVI Receivables, XIV, LLC (In re Rosenberg)*,
    471 B.R. 307 (Bankr. S.D. Fla.  2012)........................................ 10, 11, 13, 14, 21

*Schropp v. Crown Eurocars, Inc.*,
    654 So. 2d 1158 (Fla. 1995)........................................... 10, 11, 14, 15, 21

*Southern-Owners Ins. Co. v. Warren*,
    2017 WL 2889693 (M.D. Fla. 2017) ...............................................1, 13

*Winn-Dixie Stores, Inc. v. Robinson*,
    472 So. 2d 722 (Fla. 1985)....................................................................15

## <u>STATUTES</u>

Fla. Stat. §768.72 ................................................................................14, 15

# I.
## <u>PREFACE</u>

Appellees' Answer Brief is based upon a fallacy: that "**the Association never once contended in the proceeding below that it was not responsible for the actions of its [former] President, [Appellant Marglli Gallego ("Gallego")] and/or that her acts were done outside of her role as the President of the Association**." *See* Answer Brief, p. 12 (emphasis in original). This record on appeal reveals otherwise.

Like the Bankruptcy Court's underlying Orders and Final Judgment, Appellees' Answer Brief is based upon a misapplication of basic Florida agency law (and, bluntly, common sense).

As argued by the Association's counsel below, a principal is liable (either directly or vicariously) only for those acts of an agent committed **within the scope of his or her employment**; a principal is **not *per se* liable** for any actions by an agent, whether that agent is a low-level employee, a director/officer, or an owner. *See Southern-Owners Ins. Co. v. Warren*, 2017 WL 2889693, *4 (M.D. Fla. 2017).

So, what happened? The Bankruptcy Court was aware of this issue, explicitly addressed it, and, based upon the evidence before it, erred as a matter of law.

1

## II.
## CLARIFYING THE RECORD ON APPEAL

### A.
### Who is Gallego?

In short: a thief.  Gallego (along with her accomplices) used her Board positions with the Hammocks Community Association Inc. (the "Association") to fleece the Association's member homeowners of millions of dollars over a period of approximately seven (7) years.  [D.E. #537, pp. 3-5; D.E. #537-1].  Ultimately, in response to complaints by homeowners, Gallego was arrested twice, once in April 2021 and, again (together with her accomplices), in November 2022.  *Id.* at pp. 2, 4-6.  These arrests resulted in the appointment of the Honorable David M. Gersten (Retired) as the court-appointed Receiver for the Association.  [D.E. #537-3].

### B.
### Historical Perspective

### 1.
### The 2018 Motions for Contempt

In July and August 2018, Appellees filed motions for contempt against the Association and Gallego.  [D.E #140; D.E. #159].  Those motions were based upon Gallego acting on behalf of herself to satisfy her own personal vendetta against Appellees (who were among the homeowners who had "blown the whistle" on Gallego's fraud), to wit: 1) "challeng[ing] [Appellee Leticia Cepero ("Mrs. Cepero")] to a fist fight;" 2) calling Mrs. Cepero a "whore" and Appellees "thieves and liars;" and, 3) refusing to accept Appellees' payments to the Association.  [D.E.

#140, ¶7; D.E. #140-1, ¶¶6, 8-10; D.E. #153, ¶7].

## 2.
## <u>The Contempt Orders</u>

As a result of Gallego's actions, in December 2018, the Bankruptcy Court entered two (2) contempt orders.  [D.E. #189; D.E. #191].

One Order was directed to both the Association and Gallego and: 1) found both liable for Appellees' attorneys' fees incurred in filing the motions for contempt; and, 2) directed both to refrain from further "contact" and "communication" with Appellees.  [D.E. #189].

The other Order[1], acknowledging the personal nature of Gallego's misconduct, was directed to **<u>Gallego only</u>** and directed her to refrain from contacting, communicating with, or "**<u>approach[ing]</u>**" Appellees "to prevent any further **<u>altercations</u>** between Ms. Gallego **<u>in her individual capacity</u>**" and Appellees.  [D.E. #191] (emphasis added).

## 3.
## <u>The May 2019 Incident</u>

In September 2019, Appellees filed another motion for contempt.  [D.E. #199].  That motion was based, in pertinent part, upon a May 15, 2019 altercation between Appellees and Gallego.  Appellees claimed that Gallego: 1) "confronted [them] by blocking their car with a[]n . . .  association vehicle while they were

---

[1] This Order and the aforementioned December 2018 Order are collectively referred to as the "2018 Contempt Orders."

visiting another property in the Association;" and, 2) "began yelling at [them] and called the police . . . ." *Id.* at ¶¶5, 6.

Attached to that motion was an Affidavit of a witness (Maria Alonso) who attested that during that altercation she witnessed Appellee Josue Cepero ("Mr. Cepero") "holding a paper to the window [of his vehicle] and showing it to Ms. Gallego;" "that paper was the stay away order **against Ms. Gallego** . . . which prohibited Ms. Gallego from contacting or **approaching** the Ceperos." [D.E. #199-1, ¶¶17, 18] (emphasis added).

### 4.
### The First Evidentiary Hearing

Beginning in February 2020 (and concluding in February 2021[2]), the Bankruptcy Court conducted a trial on Appellees' September 2019 motion for contempt. [D.E. #255; D.E. #321; D.E. #322].

During that trial, Gallego's story was that Appellees blocked Gallego's vehicle (not vice versa) after following Gallego to her home (located in the Association) after picking up her son from school. [D.E. #321, p. 194:1-p. 197:8]. Gallego also testified that: 1) she had a pre-existing relationship with Appellees, which turned sour after Mr. Cepero's work for the Association ceased[3]; and, 2)

---

[2] The conclusion of the trial was delayed due to the intervening COVID-19 pandemic.

[3] As evidenced by Affidavits submitted by the Receiver to the Bankruptcy Court, Gallego and Mr. Cepero agreed that: 1) Mr. Cepero would be provided with the

4

during the May 2019 incident, Mr. Cepero held up a letter (which was admitted into evidence) that had been sent to some residents accusing Gallego and other Board members (i.e. her accomplices) of fraud.  *Id*. at p. 187:10-p. 191:6, pp. 202:25-p. 204:24.

**5.**
**The 2020 Lawsuit**

In November 2020, in the interim between the first and second parts of that trial, Gallego and the Association (wholly controlled by Gallego) sued Mrs. Cepero for defamation.  [D.E. #321, Ex. 21].  The basis of that lawsuit was statements made by Mrs. Cepero about Gallego's fraud, including that Gallego: 1) "was stealing money" from the Association; and, 2) "was committing ballot fraud during the association elections."[4]  *Id.* at ¶¶18, 19, 21.

**6.**
**The July 2021 Contempt Order**

In July 2021, the Bankruptcy Court entered its Order finding Gallego and the Association in contempt for violating the 2018 Contempt Orders.  [D.E. #328].

---

lucrative opportunity to provide electrician services to the Association, through his independent company; and, 2) in exchange for Gallego allowing him to do so, **Mr. Cepero would pay kickbacks to Gallego** (i.e. a percentage of the monies paid by the Association to Mr. Cepero's company for those purported services).  [D.E. #546-1, ¶¶10-11; D.E. #546-2, ¶¶7, 8].  That relationship ended when Gallego began demanding a "bigger piece of the pie."  [D.E. #546-1, ¶11; D.E. #546-2, ¶8].

[4] Gallego also sprinkled into that Complaint allegations regarding statements made by Mrs. Cepero about the fraudulent conduct of her accomplices.  *Id.* at ¶¶20, 22.

Despite the clearly personal nature of the May 2019 altercation, and specifically noting that Gallego and Appellees "have had a contentious relationship for the last four or five years[5]," the Bankruptcy Court found that incident to be "a violation by Ms. Gallego, and **by extension, the Association, as Ms. Gallego was driving an official Hammocks vehicle**, of the Contempt Orders." *Id.* at pp. 2, 8 (emphasis added).   The Bankruptcy Court made no other finding regarding how the Association violated the Orders with regard to the May 2019 incident.

Further, despite noting that the 2020 Lawsuit addressed statements about "Ms. Gallego," the Bankruptcy Court cursorily found that both Gallego <u>and</u> the Association violated the Bankruptcy Code's automatic stay by filing that Lawsuit. *Id.* at pp. 8-11.

### 7.
### <u>The October 2021 Order on Sanctions</u>

In October 2021, the Bankruptcy Court entered its Order: 1) finding Gallego and the Association jointly and severally liable for Appellees' attorneys' fees; and, 2) reserving on compensatory and punitive damages (pending an evidentiary hearing).  [D.E. #339].

---

[5] Although the evidence clearly showed the "contentious relationship" was a personal matter between Gallego and Appellees, the Court's Order vaguely noted that "contentious relationship" was between Appellees, "on the one hand, and Ms. Gallego, the president of the Association, and the Association on the other hand . . . ." *Id.* at p. 2.

As to punitive damages, the Court found that Gallego (**not the Association**): 1) acted "recklessly and carelessly when **she** deliberately cut off [Appellees] with her car, and then called the police with **her** manufactured story about the [Appellees] following her;" and, 2) acted "recklessly and callously when **she** initiated the November 2020 Lawsuit, knowing that Mrs. Cepero was still in bankruptcy, and knowing **she** could not sue Mrs. Cepero while she was in bankruptcy." *Id.* at p. 9 (emphasis added).

### 8.
### December 30, 2021: The Evidentiary Hearing

In December 2021, the Bankruptcy Court conducted an evidentiary hearing on Appellees' claimed compensatory damages.   [D.E. #403].   During that illuminating hearing, the personal, entirely self-motivated nature of Gallego's misconduct came into clear focus.

First, Gallego's personal criminal attorney personally appeared to advise the Court that Gallego had been charged with an organized scheme to defraud and grand theft against the Association.  *Id.* at p. 363:1 - p. 364:8.  Consequently, Gallego was asserting her Fifth Amendment privilege and would not be testifying during that hearing.  *Id.* at p. 364:8-10.

Then, Mrs. Cepero testified concerning Gallego's personally motivated misconduct that occurred after Gallego "took over the Association." *Id.* at p. 399:11-19.  That personal misconduct included Gallego telling Mrs. Cepero (upon the

conclusion of an Association meeting) "that she was going to kill me and cut my neck" and that she "ha[d] someone that could do that." *Id.* at p. 399:20 - p. 400:9.

In an effort to further establish that Gallego's conduct was purely personal in nature, the Association's then counsel (hereinafter, "Prior Counsel")[6] questioned (or, at least, attempted to question) Mrs. Cepero about whether the Association approved, directed or sanctioned Gallego's misconduct. *Id*. at p. 410:10-14, p. 435:5 - p. 436:18, p. 438:25 - p. 439:5.

Appellees' counsel, thwarting the truth, objected to much of that questioning, arguing, in part, "you already ruled on this. . . . [T]hey're trying to backtrack and say it was only [Gallego] that should have been held in contempt. . . . She was the president. She was in the car at the time." *Id*. at p. 435:5 - p. 436:6.

The Bankruptcy Court improperly sustained those objections to these extremely relevant questions. *Id*. at p. 436:19-20, p. 439:6-8. The Bankruptcy Court noted that Prior Counsel was "free to argue in your closing argument why you believe that the [A]ssociation should not be assessed punitive damages on account of the behavior of Ms. Gallego, and then I'm sure [Appellees' counsel] will be robustly arguing the underlying vicarious liability . . . ." *Id.* at p. 436:20 - p. 437:9.

---

[6] Promptly after his appointment, the Receiver terminated the representation of Prior Counsel and all other counsel who were also then representing the Association in other matters. Those terminated attorneys were hand-selected and retained by Gallego and her accomplices.

**9.**
**The Order on Damages**

On June 8, 2022, the Bankruptcy Court entered its Order on Damages.  [D.E. #480].  Regarding compensatory damages, the Court cursorily found both Gallego and the Association liable "due to the prior conduct of Ms. Gallego, as condoned by the Association."  *Id.* at pp. 6-7.  The Bankruptcy Court failed to detail or explain the basis of what the Association did to "condone" that conduct.

As concerns punitive damages, the Bankruptcy Court noted the Association's argument that it should not be held liable for such damages "because [Appellees] have not presented any evidence that the Association, as opposed to Ms. Gallego, acted in a way that would warrant punitive damages [] against the Association."  *Id.* at p. 9.

The Bankruptcy Court agreed, although citing the outdated case of *Mercury Motors Exp., Inc. v. Smith*, 393 So. 2d 545, 549 (Fla. 1981) for the proposition that, "[b]efore an employer may be held vicariously liable for punitive damages under the doctrine of respondeat superior, there must be some fault on his part. . . ."  *Id.* at pp. 9-10.  The Court further noted that, "the purpose of punitive damages is to punish and deter Ms. Gallego and others who might choose to abuse people through a position of influence and power."  *Id*. at p. 12.

The Court found: 1) the Association and Gallego jointly and severally liable for Appellees' attorneys' fees and compensatory damages; but, 2) only Gallego

9

liable for punitive damages.  *Id.*

## 10.
## Appellees' *Schropp* Motion

Thereafter, Appellees filed their motion seeking to amend the Court's June 8, 2022 Order.   [D.E. #489].   Appellees claimed that: 1) the Bankruptcy Court misstated the law when applying *Mercury Motors*; and, 2) citing *Schropp v. Crown Eurocars, Inc.,* 654 So. 2d 1158 (Fla. 1995*)*, "the Florida Supreme Court has differentiated between corporate liability for punitive damages based on the acts of an employee [when an employer has fault]; and, 'direct liability' . . . based upon acts of, as here, one of its managing agents . . . (direct liability without proof of fault of the employer)."  *Id*. at p. 2.

## 11.
## The *Rosenberg* Memorandum

In response, the Association filed a Memorandum: 1) explicitly arguing that a corporation is not "held liable per se for all wrongful acts of a managing agent;" and, 2) citing case law recognizing the obvious, well-settled proposition that an entity is liable only for acts of its employees that occur within the course and scope of their employment, including *Rosenberg v. DVI Receivables, XIV, LLC* (*In re Rosenberg*), 471 B.R. 307 (Bankr. S.D. Fla. 2012).  [D.E. #502, ¶¶12-16, 18].

## 12.
## The July 14, 2022 Hearing

On July 14, 2022, the Bankruptcy Court conducted a hearing on Appellees'

*Schropp* Motion.  [D.E. #526].  Addressing the very issue now before this Court, Prior Counsel argued that, "[w]hether it's direct liability [or] vicarious liability, . . . and as noted by the *Rosenberg* decision, there has to be some actual evidence showing that the person was acting **in their capacity as an agent**." *Id*. at p. 22:17-22 (emphasis added).

In response to the Bankruptcy Court's skepticism that *Rosenberg* (which the Court indicated it had read) applied such a "limitation" upon the principles set forth in *Schropp*, Prior Counsel correctly advised the Court that: 1) "in *Schropp* it was an agent acting for the corporation and **within the scope of their employment**;" and, 2) Appellees "didn't allege that [Gallego] was acting in her capacity as president [of the Association]." *Id*. at p.23:24 - p. 24:16, p. 25:12-19 (emphasis added).

Prior Counsel also made it clear that the Association "never avowed" Gallego's actions and reminded the Bankruptcy Court of its "separate stay away orders" as well as of the "relationship [with Appellees] that preceded [Gallego's] tenure as president of the association." *Id*. at p. 24:17-21, p. 29:4-10.

Yet, and in spite of the significant evidence indicating that Gallego's misconduct was clearly personal in nature, the Bankruptcy Court found Gallego and the Association jointly and severally liable for all claimed damages.  [D.E. #510; D.E. #521].

11

### III.
### ARGUMENT

### A.
### The Correct Statement of the Law

### 1.
### Corporate Liability, Generally

To be clear: before a corporation can be held liable for **any damages** claimed as a result of the conduct of one of its lower-level employees **or managing agents**, it must be found that the employee/agent's alleged misconduct was committed **during the scope of their employment**. *See Kent Ins. Co. v. Schroeder*, 469 So. 2d 209, 210 (Fla. 5th DCA 1985) (finding corporation liable (for punitive damages) arising from an altercation between the owner-manager of a bar and an intoxicated business associate on the basis that the owner-manager, who was attempting to remove his business associate so that he could close the bar for the night, was "**acting in the scope of his employment [as] the president and managing agent**") (emphasis added); *see also Fields v. The Devereux Foundation, Inc*., 244 So. 3d 1193, 1196 (Fla. 2d DCA 2018) ("[T]o establish that the conduct occurred within the scope of employment . . ., the employee's conduct must be 'of the kind he was employed to perform,' must occur 'substantially within the time and space limits authorized or required by the work to be performed,' and must be 'activated at least in part by **a purpose to serve the master**.'") (emphasis added) (quoting *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M*., 783 So. 2d 353, 357 (Fla. 3d DCA 2001)).

12

In fact, the Middle District of Florida addressed the issue of whether the "within the scope of employment" requirement applies to managing agents head-on in *Southern-Owners Ins. Co.*, 2017 WL 2889693 at *4.

The *Southern-Owners* Court rejected an argument that the actions of the owner of a cable installation company (who shot his wife and daughter in their home, after stopping off there to use the restroom, while en route to an installation job) were imputable to the company.  *Id*. at *1.

The *Southern-Owners* Court distinguished *Kent* on the basis that:

> the *Kent* decision does **not** stand for the proposition that any action of a business owner . . . is imputable to the business.  The *Kent* decision, instead, simply concludes that [] since the owner's actions were committed **within the scope of his employment**, the [corporation] could be held liable for the damage caused by his actions.

*Id*. at *4 (emphasis added).

As highlighted to the Bankruptcy Court, this basic tenet of principal liability (as applied to managing agents) was recognized by this District Court in *Rosenberg*. [D.E. #502, ¶¶12-14].  As stated in the Association's *Rosenberg* Memorandum:

> In *Rosenberg*, Judge Cristol held that it was proper to hold U.S. Bank, N.A., as a disclosed principal, directly liable for the acts of its **managing agents** because at all relevant times the agents **acted as agents for** U.S. Bank, N.A. . . .  In arriving at its holding, the [*Rosenberg*] Court noted that . . . the principal allowed the agent . . .  to take **actions on the principal's behalf** . . . .

*Id*. at ¶12.

To quote Prior Counsel at the December 2021 evidentiary hearing on

13

Appellees' *Schropp* Motion: "in every single case, including those with direct liability, there has been evidence presented that the agent was acting within their agency and purporting themselves as agent to the aggrieved party, whether it be *Schropp*, whether it be *Rosenberg*, every single case."  [D.E. #526, p. 30:9-15].

Bottom line: As argued to the Bankruptcy Court in the *Rosenberg* Memorandum, **there is no theory of "per se" corporate liability**.  [D.E. #502, ¶12].

## 2.
## Vicarious vs. Direct Liability: An Inapposite Distinction

It is correct, as noted by the Bankruptcy Court, that in determining whether a corporation is liable for punitive damages as a result of the conduct of its employee, there are different standards applied depending upon whether the employee is or is not a managing agent, i.e. whether punitive damages are sought against the corporation on the basis of vicarious liability or direct liability, respectively.

### a.
### Syllogism

If the employee is not a managing agent, Section 768.72(3) of the Florida Statutes requires as least "gross negligence" by the corporation.[7]

---

[7] Although not argued below (and not pertinent to the issues herein), the *Mercury Motors* "some fault" standard no longer applies to claims for punitive damages against employers.  Prior to the Florida Legislature's 1999 amendment of Section 786.72 (to include subsection (3)), "all that was required to impose vicarious liability for punitive damages on an employer or principal was to show 'some fault' or 'ordinary negligence' on their part . . . ."  *Ranger Construction Industries, Inc. v. Allied World Nat'l Assurance Co.*, 2019 WL 13090449, *6 (S.D. Fla. 2019). However, as a result of that amendment, "now the plaintiff must show, at a

If the employee is a managing agent, then the *Schropp* standard applies. Under that standard, "the level of wrongdoing that must be established on the part of the managing agent [] is the same as that necessary to award punitive damages against an individual tortfeasor," i.e. "the *corporate defendant* [through the managing agent, must have] acted with 'malice, moral turpitude, wantonness, willfulness or reckless indifference to the rights of others.'" *Ranger Construction Industries, Inc.*, 2019 WL 13090449 at *6; *Winn-Dixie Stores, Inc. v. Robinson*, 472 So. 2d 722, 724 (Fla. 1985) (emphasis in original).

However, those logical standards cannot be applied without a finding – based upon competent substantial evidence – that the employee/managing agent was acting within the scope of his or her employment.

In other words, the employee/managing agent must be acting at least in part to serve the interests of the corporation. *See Winn-Dixie Stores, Inc. v. Robinson*, 472 So. 2d at 723 (plaintiff sued for false arrest, malicious prosecution, and conversion when he was falsely detained and accused of shoplifting by corporation's assistant manager deemed to be managing agent serving the interests of the corporation); *see also Bankers Multiple Line Ins. Co. v. Farish*, 464 So. 2d 530, 531

---

minimum, that the employer or principal engaged in 'gross negligence,' meaning the employer or principal's conduct 'was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." *Id.* (citing §768.72(2), Fla. Stat.).

(Fla. 1985) (President and Chairman of insurance company, who also owned hotel employing woman whose husband was killed in a car accident, deemed to be managing agent serving the company's interests, persuaded that woman to replace her counsel in a lawsuit against the alleged tortfeasor (an insured of that insurance company) with counsel selected by that managing agent and also offered her, through another employee of that insurer, a job and medical coverage; the terminated law firm sued insurance company and its managing agent for tortious interference).

**B.**
**<u>The Correct Law + The Evidence = No Association Liability</u>**

The evidence presented to the Bankruptcy Court that Gallego's misconduct was committed to further her own personal interests (in direct conflict with the Association's interest) permeates this entire case, including the interstices of the evidence presented.  Thus, the Association is not liable for that conduct under either a vicarious or direct liability theory.

To recap: Gallego and Appellees had a years-long **<u>personal</u>** relationship, which resulted in a falling-out.  [D.E. #321, p. 187:10 - p. 191:6; D.E. #328, p. 2]. Thereafter, Gallego initiated a campaign of harassing Appellees, including the following egregious conduct: 1) physically threatening Mrs. Cepero, including threatening to kill her (or to have her killed); 2) refusing to accept Appellees' homeowners' association payments to the Association (a direct detriment to the

16

Association's finances); and, 3) blocking Appellees' vehicle during the May 2019 incident.   [D.E. #140, ¶7; D.E. #140-1, ¶¶6, 8-10; D.E. #403, p. 399:11 - p. 400:9].

Gallego's transparent conduct evidenced Gallego's retaliation for Appellees' complaints about Gallego and her accomplices' fraud.   There is no plausible argument that Gallego's actions served or helped the Association in any way.

Further, the 2020 Lawsuit – one of the two underpinnings of the Judgment against the Association – was directed to those very complaints.[8]   [D.E. #321, Ex. 21, ¶¶18, 19, 21].

### 1.
### Even the Bankruptcy Court Grasped the Personal Nature of Gallego's Actions

In fact, the Bankruptcy Court explicitly acknowledged the personal nature of the dispute between Gallego and Appellees, entering a separate contempt order against Gallego "**in her individual capacity**" to prevent additional "altercations" in light of Gallego's initial "physical threat."  [D.E. #191].

This record reveals that the May 2019 incident – the other underpinning of the Judgment against the Association – was an "altercation" committed in Gallego's "individual capacity."   In fact, a witness (and friend of Appellees) attested that

---

[8] Despite the nature of the statements underlying that Lawsuit, the Bankruptcy Court cursorily found the Association jointly liable for the filing of that Lawsuit.  [D.E. #328, pp. 8-11].

during that incident Mr. Cepero held up that very contempt order in an apparent attempt to get Gallego to back off.  [D.E. #199-1, ¶¶17-18].[9]

Curiously, even though the Bankruptcy Court remarked that it could not "ignore the fact that Ms. Gallego has been arrested for committing fraud that harmed the association," it apparently ignored the direct evidence of the obvious connection between that fraud and Gallego's harassment of Appellees.  [D.E. #526, p. 35:7-9]. Even Gallego's criminal attorney connected the dots, making it crystal clear to the Bankruptcy Court that Gallego was asserting her Fifth Amendment privilege and refusing to further testify regarding her harassment of Appellees in light of her April 2021 arrest for defrauding the Association.  [D.E. #403, p. 363:1 - p. 364:10].

There is no competent substantial evidence to support a finding that Gallego's harassment furthered the Association's interests.  Yet, that "<u>furtherment</u>" <u>finding</u> is <u>required</u> in order to hold the Association liable for **<u>any</u>** damages.

## 2.
## <u>The Gossamer Hook Upon Which the Bankruptcy Court's Order Hangs Its Hat</u>

In support of awarding damages against the Association, the Bankruptcy Court hangs its ruling upon: 1) Gallego's use of an Association vehicle at the time

---

[9] Also indicative of the personal nature of her dispute with Appellees, Gallego testified that during that incident Mr. Cepero held up a letter that had been circulated among homeowners accusing **Gallego** (and **her accomplices**) of **defrauding the Association**; a photograph of him doing so was admitted into evidence. [D.E. #321, p. 202:25 - p. 204:24].

of her personal harassment of Appellees during the May 2019 incident; and, 2) Gallego's concocted story that Appellees instigated that incident.[10]  [D.E. #328, p. 8; D.E. #339, p. 9].

First, *arguendo*, even if Gallego used the Association's vehicle for authorized Association business (including an inspection[11]), under any legal standard, that use is insufficient, as a matter of law, to impute her subsequent personal misconduct to the Association. *See Martin v. United Sec. Services, Inc.,* 373 So. 2d 720, 721 (Fla. 1st DCA 1979) (finding that security guard who raped and murdered resident of complex serviced by security company, whose apartment employee used to call company regarding the status of a relief security guard, was not acting within the

---

[10] During the December 2021 evidentiary hearing, the Court also questioned Prior Counsel about who was paying him (regarding his joint defense of the Association and Gallego).  [D.E. #526, p. 524:22].  Prior Counsel advised the Court that he was being paid by the Association because "she was the president[, the Association] ha[s] a duty to indemnify her . . . ." *Id.* at 524:23 - p. 525:7.  Irrespective of Gallego's underlying fraud, which was found to include her fraudulently using Association monies to retain attorneys (purportedly on her and the Association's behalf) to harass Association members (to cover up her fraud) – including the 2020 Lawsuit – and to defend against efforts to uncover her fraud, any indemnification obligation by the Association is irrelevant with respect to the determination of whether Gallego was acting in the course of her employment during her harassment of Appellees.

[11] At one point during the incident, Gallego claimed that she was on her way to conduct an inspection for the Association.  [D.E. #526, p. 15:24 - p. 16:5].  However, there is no indication in the Court's Orders that it considered that factor in finding the Association liable for Gallego's personal misconduct, nor does that factor impute Gallego's personal misconduct to the Association.

scope of his employment as he "had 'stepped way' from [the company's] business at the time of the criminal attack . . . .").

Gallego's self-motivation is evidentiarily borne out by: 1) Gallego making a false report to the police (and similar false testimony to the Bankruptcy Court) to attempt to cover up her motive behind that incident, i.e. to retaliate against Appellees for exposing her fraud; and, 2) Gallego filing her 2020 Lawsuit as yet another attempt to quiet Appellees' complaints to enable Gallego's plundering of the Association to continue.

## C.
## <u>Appellees' Waiver Argument is</u>
## <u>Incontrovertibly Refuted by This Record</u>

Appellees' claim that the Association "**<u>never once</u>** contended in the proceeding below that it was not responsible for the actions of [Gallego]" and, "**<u>[a]t</u>** **<u>no time</u>**," contended that Gallego "acted on her own" is demonstrably false. *See* Answer Brief, p. 12 (emphasis added).

During the December 2021 evidentiary hearing, Prior Counsel attempted to question Mrs. Cepero on that critical issue – which is a prerequisite to any finding of damages against the Association – yet, he was thwarted by Appellees' vigorous objection and the ruling of preclusion by the Bankruptcy Court.  [D.E. #403, p. 410:10-14, p. 435:5 - p. 437:9, p. 438:25 - p. 439:8].

**1.**
**Further Refutation of Appellees' Waiver Postulation**

In the Association's response to Appellees' *Schropp* Motion (and during the hearing on that Motion), the Association's Prior Counsel argued that: 1) a corporation is not "held liable per se for all wrongful acts of a managing agent;" and, 2) more specifically, "[w]hether it's direct liability [or] vicarious liability," "there has to be some actual evidence showing that the person was acting in their capacity as an agent," citing *Rosenberg* and other case law supporting that proposition. [D.E. #502, ¶¶12-16, 18].

Appellees' claim that the Association failed to preserve this argument for appeal is meritless. *See Perez v. State*, 919 So. 2d 347, 359 (Fla. 2005) ("For an issue to be preserved for appeal, . . . it 'must be presented to the lower court and the specific legal argument or ground to be argued on appeal must be part of that presentation if it is to be considered preserved.'") (quoting *Archer v. State*, 613 So. 2d 446, 448 (Fla. 1993)).

**IV.**
**CONCLUSION**

This Court should reverse (as to the Association only) the Orders of the Bankruptcy Court finding liability and awarding damages [D.E. #328, #339, #477, #480], as well as the Bankruptcy Court's resulting Final Judgment [D.E. #521].

Respectfully submitted on this 24th day of May, 2023.

By: *Melanie E. Damian*                     By: *Eric R. Thompson*
**Melanie E. Damian** (FBN: 99392)        **Eric R. Thompson** (FBN 888931)
**Kenneth D. Murena** (FBN: 147486)       **GORDON REES**
**DAMIAN VALORI CULMO**                   **SCULLY MANSUKHANI LLP**
1000 Brickell Avenue, Suite 1020          Miami Tower
Miami, Florida 33131                      100 SE Second Street, Suite 3900
Telephone: (305) 371-3960                 Miami, Florida 33131
Facsimile: (305) 371-3965                 Telephone: (305) 428-5300
Email: mdamian@dvllp.com                  Facsimile: (877) 634-7245
Email: kmurena@dvllp.com                  Email: ethompson@grsm.com

*Counsel for the Honorable David M.*      *Counsel for the Honorable David M.*
*Gersten (Retired), as Court-appointed*   *Gersten (Retired), as Court-appointed*
*Receiver of the Hammocks Community*      *Receiver of the Hammocks Community*
*Association Inc.*                        *Association Inc.*

### CERTIFICATE OF COMPLIANCE

WE HEREBY CERTIFY that this Reply Brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because it contains 4,857 words, excluding the parts of the brief exempted by Rule 8015(g), and is produced using 14-point Roman type, including footnotes. Counsel relies on the word count of the computer program used to prepare the brief.

By:  */s/ Eric R. Thompson*              By: *Melanie E. Damian*
Eric R. Thompson (FBN 888931)           Melanie E. Damian (FBN: 99392)