United States District Court
for the
Southern District of Florida

| | |
|---|---|
| In re: | ) |
| | ) |
| Josue Cepero and Leticia Cepero, Debtors. | ) Civil Action No. 22-22686-Civ-Scola |
| | ) |
| Hammocks Community Association Inc., and Marglli Gallego, Appellants, | ) |
| | ) |
| v. | ) Bankruptcy Case No. 17-20358-LMI |
| | ) |
| Josue Cepero and Leticia Cepero, Appellees. | ) |

## **Opinion and Order**

This matter is before the Court on Appellants Hammocks Community Association Inc. ("Hammocks") and Marglli Gallego's (collectively, the Appellants) Initial Brief (ECF No. 10) on their appeal of the bankruptcy court's orders finding the Appellants in contempt and granting damages to the Appellees (and Debtors below), Josue and Leticia Cepero.[1] The Appellees have submitted their Answer Brief. (ECF No. 20.) Hammocks has filed a Reply Brief. (ECF No. 33.) The Ceperos have also filed a motion to strike Hammocks' Reply Brief. (Mot. Strike, ECF No. 34.) Hammocks has responded. (Resp., ECF No. 35.) The Ceperos have not filed an optional reply, and the time to do so has passed. After considering the briefs, the record, the argument of counsel, and the applicable authority, and for the reasons set forth below, the Court **affirms in part** and **denies in part** the bankruptcy court's Contempt Orders, **denies** the Ceperos' motion to strike (**ECF No. 34**), and **remands** this matter for further proceedings consistent with the terms of this order.

---

[1] Collectively, the bankruptcy court orders addressing the contempt findings and damages that are the subject of appeal here are the following orders, as identified on the bankruptcy court's docket: ECF No. 328 ("Order Finding Hammocks Community Association and Marglli Gallego in Contempt"), ECF No. 339 ("Order on Sanctions"), ECF No. 477 ("Order Granting in Part Motion to Reconsider"), ECF No. 480 ("Order on Damages"), and ECF No. 510 ("Order Granting in Part Motion to Alter or Amend Judgment for Rehearing, Relief from Judgment and/or Reconsideration as to ECF 480"). (Not. Appeal at 1-2, ECF No. 1.) The Court will refer collectively to the orders on appeal as the "Contempt Orders," or will reference them individually by docket entry number from the bankruptcy court case (as "Bk. ECF No."), as appropriate.

### 1. Background

This matter arose from Appellees Josue and Leticia Cepero's Chapter 13 bankruptcy proceedings. Hammocks, as the homeowner's association for the Ceperos' residence, is a creditor in the underlying bankruptcy. Gallego was, at the time, Hammocks' president. (Bk. ECF No. 389, R. at 412.) She and the Ceperos had also maintained a personal relationship prior to the bankruptcy proceeding. (*Id.*) Needless to say, that personal relationship soured. Prior to filing for bankruptcy, the Ceperos began publicly alleging that Gallego was abusing the authority of her position as Hammocks' president to commit fraud and enrich herself, at the expense of Hammocks' residents. (R. at 260-64, 277-82.)

While the Court need not recount every detail here, these accusations resulted in deteriorating personal relationships, to the extent that the bankruptcy court felt it necessary to issue orders directing Gallego, and Hammocks, to cease and to avoid contact and communications with the Ceperos (and vice-versa; referred to as the "No-Contact Order"). (Bk. ECF No. 189, R. at 2-3.) Nevertheless, Gallego and the Ceperos became involved in an "altercation" on May 15, 2019 (the "May 2019 Incident"). (R. at 412-13.) The bankruptcy court held an evidentiary hearing, where it heard from witnesses to the altercation—including a responding police officer, a security guard, another witness, and Mr. Cepero, as well as Gallego herself—and reviewed documentary evidence, including video recordings of the incident and an audio tape of Gallego's call to 911 at the beginning of the incident. (R. at 412-18.)

Ultimately, the bankruptcy court found Gallego's testimony to be wholly incredible because the Court observed that she had lied about when she first called 911, who had blocked whose car, and the events leading up to the incident. (R. at 417-18.) The bankruptcy court observed that physical evidence, including the 911 call recording and the video footage of the incident, contradicted Gallego's statements. (*Id.*) Accordingly, the bankruptcy disregarded her testimony in its entirety. (*Id.*)

Based on the testimony of Mr. Cepero and the other witnesses, as well as the physical evidence, the bankruptcy court found that Gallego initiated the altercation by pulling in front of and blocking the Ceperos' car in the spot where it was parked. (*Id.*) The bankruptcy court observed that Gallego then "got out of [her] car and approached the Ceperos' car while talking on the phone." (R. at 416.) The Ceperos remained in their car for the duration, and the altercation ended after the police responded and began to question those involved. (R. at 416-18.) Finally, the bankruptcy court observed that Gallego was driving a Hammocks vehicle at the time. (R. at 418.) Based on these

factual findings, the bankruptcy court determined that both Gallego and Hammocks had violated the No-Contact Order. (*Id.*)

After the May 2019 incident, and while the bankruptcy proceedings remained ongoing, Gallego and Hammocks filed suit in Florida state court against Leticia Cepero for defamation, among other acts. (R. at 418-19.) The lawsuit—filed in November of 2020—alleged that Mrs. Cepero had made "false and defamatory statements over the last four years (at a minimum) about Ms. Gallego," thereby harming Gallego and Hammocks. (*Id.*) Upon being informed of the Ceperos' ongoing bankruptcy, Gallego's and the Hammocks' counsel immediately dismissed the suit. (*Id.*) Based on the allegations in the "November 2020 Lawsuit," the bankruptcy court found that Gallego and Hammocks had violated the automatic stay, but not the No-Contact Order. (R. at 419-20.)

Based on the May 2019 Incident (as a violation of the No-Contact Order) and the November 2020 Lawsuit (as a violation of the automatic stay), the bankruptcy court granted the Ceperos' request for damages. (R. at 421-22.) The bankruptcy court considered the question of damages separately, and it ultimately awarded the Ceperos their attorneys' fees, damages for emotional distress, and punitive damages. (Bk. ECF Nos. 339, 480, 510, R at. 423-34, 709-21, 745-50.) The bankruptcy court awarded the Ceperos a total of $126,718.80 in actual damages and another $126,718.80 in punitive damages, for a total award of $253,437.60. (R. at 750.) The bankruptcy court imposed these damages jointly and severally against both Gallego and Hammocks. (*Id.*)

Gallego and Hammocks filed this appeal in August of 2022, seeking to overturn the bankruptcy court's findings of contempt and imposition of monetary sanctions. (Not. Appeal at 1-2.) They initially raised five arguments on appeal. (Init. Brief at 21-22.) First, they argue that the bankruptcy court "erred in finding that the terminology in the [No-Contact] Order . . . is clear, definite, and unambiguous." (*Id.* at 21.) Second, they argue that the bankruptcy court's findings of contempt were not supported by clear and convincing evidence. (*Id.* at 21-22.) Third, they argue that the bankruptcy court "improperly held Hammocks in contempt" for Gallego's role in the May 2019 Incident. (*Id.* at 22.) Fourth, they assert that the bankruptcy court abused its discretion in finding that the November 2020 Lawsuit violated the automatic stay. (*Id.*) Fifth, and finally, they argue that the bankruptcy court erred in holding Hammocks jointly and severally liable for punitive damages, both by applying the wrong standard and applying the standard it did use incorrectly. (*Id.* at 22-23.)

The Ceperos responded in opposition to each point, arguing that the No-Contact Order was clear, the bankruptcy court's determinations should be not overturned as they are not clearly erroneous, and that the bankruptcy court

applied the right standard, correctly, to find Hammocks jointly and severally liable for punitive damages. (Ans. Brief at 12-13.) The Ceperos also argue that Hammocks waived its argument relating to the imposition of joint and several liability for punitive damages below. (*Id.*)

Only Hammocks replied, however, and after an extended stay of this matter: Gallego was arrested in November of 2022 following complaints by many homeowners that she defrauded Hammocks and its residents "of millions of dollars over a period of approximately seven (7) years" as president. (Reply Brief at 2.) Hammocks therefore had a receiver appointed to take over its operations. (*Id.*) The receiver fired prior counsel (who had represented both Gallego and Hammocks) and, after the resolution of additional matters in the bankruptcy court below, replied to the Ceperos' Answer Brief alone (Gallego has not replied). (*Id.*) Hammocks now argues that it cannot be held liable for Gallego's actions because her misconduct was not committed during the scope of her employment as Hammocks' president. (*Id.* at 12-21.)

The Ceperos responded with a motion to strike, arguing that Hammocks raises issues not argued below and not raised in the Appellants' Initial Brief. (Mot. Strike at 1-3.) Hammocks, of course, asserts in response that no new arguments have been raised—even if Hammocks' counsel now puts a clearer argument forward about <u>why</u> Hammocks cannot be jointly and severally liable for the Ceperos' damages, that argument was made repeatedly below and at length in the Initial Brief. (Resp. at 2-4.)

### 2. Standard of Review

The Court reviews 'the bankruptcy court's findings of fact for clear error and the court's conclusions of law and mixed questions of law and fact *de novo.*" *In re McLean*, 794 F.3d 1313, 1318 (11th Cir. 2015). "A finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1545 (11th Cir. 1996). Decisions regarding the imposition of sanctions through civil contempt orders are reviewed for an abuse of discretion. *Id.* "Applying this standard, a reviewing court 'must affirm unless [it] find[s] that the lower court has made a clear error of judgment, or has applied the wrong standard.'" *In re Siskind*, 2018 WL 634547, at *1 (S.D. Fla. Jan. 31, 2018) (Rosenberg, J.) (quoting *In re Walker*, 532 F.3d at 1308.) "The reviewing court may affirm on any legal ground supported by the record." *Id.*

### 3. Analysis

The Court, in summary, finds that the bankruptcy court did not abuse its discretion in finding that Gallego violated the No-Contact Order during the May 2019 Incident. The Court further finds that the bankruptcy court did not abuse its discretion in finding that both Gallego and Hammocks violated the automatic stay by filing the November 2020 lawsuit. Therefore, the Court affirms those parts of the Contempt Orders.

But the Court finds that the bankruptcy court did not apply the correct legal standard to determine whether Hammocks should, in fact, be liable for Gallego's conduct during the May 2019 Incident and that any such finding does not have factual support in the record. Accordingly, the Court reverses this part of the bankruptcy court's findings (holding Hammocks jointly and severally liable for damages relating to the May 2019 Incident) and remands this matter for the purpose of determining whether Gallego was acting within the scope of her duties as president of Hammocks during the May 2019 Incident.

### A. The Bankruptcy Court's Factual Findings Are Not Clearly Erroneous

First, the Court observes that none of the bankruptcy court's factual findings are clearly erroneous. *In re McLean*, 794 F.3d at 1318. The bankruptcy court observed the testimony of the witnesses during its evidentiary hearing on the Ceperos' contempt motion. (R. at 417-18.) It made the decision to disregard Gallego's testimony based both upon its own observation of her testimony and on the multiple conflicts it observed between her testimony and the physical evidence presented at the hearing. (*Id.*) The Court will not second-guess the bankruptcy court's factual findings where they are based on observation of witness testimony and conflict between that testimony and physical evidence in the record. *See, e.g., In re Brown*, 742 F.3d 1309, 1317-18 (11th Cir. 2014) (holding bankruptcy court's factual findings to not be clearly erroneous where those findings had support in the record).

### B. The No-Contact Order is Sufficiently Clear

Second, the Court makes the simple observation that the No-Contact Order's prohibition of "contact" and "communication" between Gallego and Hammocks, on the one side, and the Ceperos, on the other, is sufficiently clear, definite, and unambiguous. As the Ceperos observe, the bankruptcy court "made it abundantly clear that both [Hammocks] and Ms. Gallego were forbidden from engaging in any contact or interaction with the Debtors." (Ans

Brief at 15. Whether the happenings of May 15, 2019, are termed an "altercation" (the Ceperos' choice of words) or an "incident" (Gallego's), they are precisely the sort of interaction that the No-Contact Order is worded to prevent. (R. at 2-3.) The No-Contact Order prohibits the following conduct by Hammocks and Gallego: "**any** further contact," "communication from **any** representative" of Hammocks or from its "President, Marglli Gallego." (R. at 2 (emphasis added).)

The Appellants' linguistic parsing in their Initial Brief regarding the terms "contact" and "communication" is meritless. The No-Contact Order's prohibitions are simple, clear, and straightforward. Gallego and Hammocks were barred from making contact with or communicating with the Ceperos during the bankruptcy. "Contact" is defined as "association, relationship, connection, [or] communication." *Contact*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/contact (last accessed June 23, 2023). "Communication" is defined as "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." *Communication*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/communication (last accessed June 23, 2023). The No-Contact Orders are therefore clear and unambiguous. Gallego and Hammocks were barred from any interaction or exchange with the Ceperos that involved spoken, written, or behavioral exchanges between the parties.

### C. The Bankruptcy Court Did Not Abuse Its Discretion by Finding that Gallego's Conduct During the May 2019 Incident Violated the No-Contact Order

In light of the bankruptcy court's factual findings and the clear terms of the No-Contact Order, the Court finds that the bankruptcy court did not abuse its discretion when it found Gallego to be in contempt for violating that order. Gallego's intentional blocking of the Ceperos' car during the May 2019 Incident was a form of "contact," and even if Gallego did not verbally "communicate" with the Ceperos, her behavior certainly sufficed as "communication." (R. at 412-18.) The bankruptcy court made no "clear error of judgment" in finding that Gallego violated the No-Contact Order. *See In re Siskind*, 2018 WL 634547, at *1. Gallego's violation, as demonstrated by multiple witnesses and physical evidence, was supported by clear and convincing evidence. (R. at 412-18); *Jove Eng'g*, 92 F.3d at 1545. Accordingly, the Court must affirm the bankruptcy court's finding of contempt against Gallego for her conduct during the May 2019 Incident.

### D. The Bankruptcy Court Did Not Abuse Its Discretion by Finding that Both Gallego and Hammocks Violated the Automatic Stay in Filing the November 2020 Lawsuit

Next, the Court finds that the bankruptcy court correctly determined the Appellants' filing of the November 2020 Lawsuit to be a violation of the automatic stay. Accordingly, the Court affirms the bankruptcy court's Contempt Orders against both Gallego and Hammocks for violating the stay.

The Eleventh Circuit considers the bankruptcy code's automatic stay (11 U.S.C. § 362(a)) to be "essentially a court-ordered injunction, and any person or entity who violates the stay may be found in contempt of court." *Jove Eng'g*, 92 F.3d at 1546. While the review of the bankruptcy court's entry of contempt for violating the automatic stay is still done under an "abuse of discretion" standard, that standard is "less deferential" than typical. *Id.* The Court must be satisfied that the finding of contempt is based on clear and convincing evidence and that the bankruptcy court's decision was not clearly erroneous. *Id.* at 1545.

The bankruptcy court's decision was supported by clear and convincing evidence: the substance of Gallego's and Hammocks' pleadings against Leticia Cepero. Gallego and Hammocks based the November 2020 Lawsuit not just on post-petition conduct, but also on allegations that Mrs. Cepero had made "false and defamatory statements over the last four years (at a minimum) about Ms. Gallego," and that those statements harmed Gallego and Hammocks. (R. at 418-19.) Gallego and Hammocks repeated these allegations—of defamatory statements going back four years or more—in their counts for relief as well. (*Id.*) The four years prior to November 2020 include time in 2016 and 2017 prior to the Ceperos' bankruptcy petition. Whether the November 2020 lawsuit included post-petition allegations is therefore irrelevant; it **did** include allegations relating to pre-petition conduct, which the automatic stay prohibits. 11 U.S.C. § 362(a)(1).

Therefore, the bankruptcy court's decision was not clearly erroneous, and it was supported by incontrovertible, not just clear and convincing, evidence. The Court must affirm the finding of contempt against both Gallego and Hammocks relating to the November 2020 Lawsuit.

### E. The Bankruptcy Court Did Not Apply the Correct Standard in Finding Hammocks Jointly and Severally Liable for Punitive Damages for Gallego's Conduct in the May 2019 Incident

The Court finds that the bankruptcy court's entry of contempt against Hammocks for Gallego's conduct during the May 2019 Incident is an abuse of

discretion, however. The bankruptcy court applied the wrong standard in determining that Hammocks was liable for punitive damages for Gallego's actions as its president during the May 2019 Incident.

First, the Court must briefly address the Appellees' motion to strike Hammocks' Reply Brief. The motion to strike is without merit: although Hammocks applies different legal reasoning in its Reply Brief than originally submitted in its Initial Brief, the point made remains the same, and was argued (perhaps unartfully) below. Hammocks asserts that the bankruptcy court improperly found it to be liable for Gallego's conduct because she was not performing her duties as president at the time of the May 2019 Incident. (Init. Brief at 42-43; Reply Brief at 12-19.) Therefore, the Court denies the motion to strike and considers Hammocks' reply brief in full.[2]

Florida law sets two different standards for an employer's liability for an employee's actions. The first, for all employees, is established by statute. Florida Statutes § 768.72(3) requires the following:

> (3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:
> 
> (a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
> 
> (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
> 
> (c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

---

[2] The Court notes, however, that even if it had struck Hammocks' reply brief, it still would have found that the finding of contempt against Hammocks for the May 2019 Incident was not supported by clear and convincing evidence. Rather, the evidence against Hammocks is thin (at best). The only point supporting a finding that Gallego was performing her duties as president at the time of the incident was that she was driving a Hammocks vehicle. (R. at 418.) This alone would not suffice to hold Hammocks jointly and severally liable for her conduct, as the remainder of the evidence in the record says nothing about what Gallego was doing at the time. (R. at 412-18.) Gallego's own testimony supports a finding that she was not performing her duties for Hammocks but rather was using the vehicle to pick up her son from school; this testimony is not useful to support any finding, though, because the bankruptcy court disregarded her testimony in its entirety as untruthful. (*Id.*)

The second, for an employer's managing agent, is much different, and set by the Florida Supreme Court's case law. The Florida Supreme Court has confirmed that a corporation bears direct, rather than vicarious, liability for an officer or managing agent's misconduct. *Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158, 1160-61 (Fla. 1995); *see also Bankers Mult. Line Ins. Co. v. Farish*, 464 So. 2d 530, 533 (Fla. 1985). As the Appellants themselves concede, the codification of an employer's vicarious liability for an employee's misconduct via Florida Statutes § 768.72(3) did **not** abrogate or otherwise alter the *Schropp* and *Bankers* rule that an employer is directly liable for an officer or managing agent's misconduct. (Init. Brief at 42 (citing *When Is a Manager a Managing Agent*, Christopher Johnson and Ted Craig, 75 Fla. Bar J. 62 (2001)).)

The bankruptcy court properly applied the *Schropp* standard, finding that Hammocks would be directly liable for Gallego's conduct based on her status as a managing agent (as president). (R. at 748-49.) But the bankruptcy court failed to make the final, necessary finding: it nowhere evaluates whether Gallego was acting in performance of her duties as Hammocks' president at the time of the May 2019 Incident. As Hammocks observes in its Reply Brief, there is an implicit understanding in *Schropp* and *Bankers* that the managing agent's conduct which gave cause for punitive damages must have occurred during the course of the managing agent's employment. 654 So. 2d at 1159-61 (addressing corporation's responsibility for punitive damages in the context of fraud committed by corporation's sales manager in the course of negotiating with a customer); 464 So. 2d at 533 (addressing corporation's responsibility for punitive damages in the context of president of the corporation's tortious interference with an employee's contract with the employee's attorneys).

This rule makes perfect sense, too—surely a corporation cannot be "on the hook" for its managing agent's conduct that is unrelated to the workplace. If a bank's president damages her neighbor's property in a personal dispute, the bank cannot be expected to be liable for those damages based on the president's employment. So too here: if Gallego was truly acting in a personal capacity at the time of the May 2019 Incident, then Hammocks cannot be expected to be liable for her conduct.

The only evidence that could possibly demonstrate that Gallego was acting in the course of her employment during the May 2019 Incident is the fact that she was driving a Hammocks vehicle. (R. at 418.) Because the bankruptcy court disregarded Gallego's testimony entirely due to its

perceptions of her untruthfulness, the Court will not consider it here.[3] Accordingly, there is not clear and convincing evidence in the record for the Court to find that Gallego conduct occurred during the course of her duties as Hammocks' president. Because the bankruptcy court did not determine whether Gallego was acting on behalf of Hammocks, and because the record lacks sufficient factual support for the Court to determine that she was on its review on appeal, the Court must reverse the portion of the Contempt Orders finding Hammocks to be responsible for Gallego's conduct during the May 2019 Incident. Hammocks cannot be liable for punitive damages for Gallego's conduct on May 15, 2019, based on the record presented here.

### 4. Conclusion

For the reasons stated above, the Court **affirms in part** and **reverses in part** the bankruptcy court's contempt orders and **remands** this matter to the bankruptcy court for further proceedings consistent with this order. The Court also **denies** the Ceperos' motion to strike the Association's reply. (**ECF No. 34**.) The hearing set for May 29, 2023, at 8:30 A.M. is **canceled**.

**Done and ordered** at Miami, Florida, on June 23, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

[3] As the Court observed above, if it had considered Gallego's testimony, that testimony would have supported a finding that Gallego was not acting in the course of her duties as Hammocks' president at the time of the May 2019 Incident.